# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WILLIAM PERSON,                          :
                                         :
                   Plaintiff,            :        Civil Action No.:      06-1995 (RMU)
                                         :
          v.                             :        Re Document No.:       44
                                         :
DISTRICT OF COLUMBIA *et al.*,           :
                                         :
                   Defendants.           :

## MEMORANDUM OPINION

### GRANTING THE DISTRICT OF COLUMBIA'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND GRANTING THE DISTRICT OF COLUMBIA'S PARTIAL MOTION TO DISMISS[1]

## I. INTRODUCTION

The plaintiff, William Person, brings this action pursuant to 42 U.S.C. § 1983 against the defendant the District of Columbia[2] ("the District") for the alleged deprivation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  The plaintiff alleges that during the period of his incarceration, the District violated his constitutional rights through its agents' deliberate indifference to his serious medical needs, which resulted in the amputation of his leg.  The District has filed a motion for summary judgment, contending that the Fourteenth Amendment is not applicable to the District, that the plaintiff cannot show that the alleged denial of medical care was a result of an official District policy and that the plaintiff failed to include indispensable parties in the action.  The court concludes that the plaintiff has not demonstrated

---

[1]    Although the District styles its motion as one for summary judgment, a portion of its motion is a motion for judgment on the pleadings for failing to state a claim under the Fourteenth Amendment and for failing to join indispensable parties.  Accordingly, the court treats part of the defendant's motion for summary judgment as a motion to dismiss.  *Woodruff v. Mineta*, 215 F. Supp. 2d 135, 136 n.2 (D.D.C. 2002) (treating the defendant's motion for summary judgment as a motion to dismiss); *see also* FED. R. CIV. P. 12(c).

[2]    The plaintiff originally brought claims against six defendants, of which only the District and Webster B. Trapp remain.  The pending motion is brought only on behalf of the District.

that a genuine issue of material fact exists with respect to his Eighth Amendment claim and, accordingly, grants the District's motion for partial summary judgment. With respect to the plaintiff's Fourteenth Amendment claim, the plaintiff concedes that he has not stated a cognizable claim, and the court grants the District's motion to dismiss that claim.

## II.  FACTUAL & PROCEDURAL BACKGROUND

### A.  The District's Policies

The District conducts an intake medical examination for each new inmate. Def.'s Mot., Ex. 4 at 40-41. During this intake examination, the inmate is seen by a nurse and a physician to determine if further medical attention is necessary. *Id.*, Ex. 4 (Dep. of Jewel Kendall, R.N. ("Kendall Dep.")) at 41. In addition, the inmate is given a copy of the "Inmate Handbook"[3] and informed of the "sick call system," which is one method by which an inmate may request medical attention while incarcerated. *Id.* at 8 & Ex. 3 (Dep. of Paulos Kidane, M.D. ("Kidane Dep.")) at 21-22; Kendall Dep. at 19-20, 65. To request medical attention through the sick call system, an inmate fills out a form setting forth the relevant medical issues. Kidane Dep. at 21-22; Kendall Dep. 19-20. The forms are picked up once a day and a nurse reviews the forms and responds. Kendall Dep. at 44. If the inmate has an urgent medical need, the nurse has the inmate brought to the urgent care area immediately; otherwise the inmate is seen the following day by a nurse in the cell block. *Id.* at 68.

---

[3]     The "Inmate Handbook" outlines the medical services available to inmates: "[h]ealth screening and assessment; medical clearance for work details; sick call to receive medication or routine, chronic, and emergency care and hospitalization; detoxification; eye glasses; dental; pharmacy; specialty clinics; and OBGYN (females)." Def.'s Mot., Ex. 5 at 8. In the handbook's description of "sick call," it states that inmates "should be seen within one day (Monday-Friday) of submitting a sick call request." *Id.*

Another way in which an inmate may receive medical attention is for the inmate to tell an officer of the medical problem. *Id*. at 19. That officer must then call the infirmary, where a nurse or physician reviews the inmate's chart and determines what action to take. *Id*. If medical attention is necessary, the inmate is either brought to the hospital or a nurse goes to the jail and accompanies the inmate to the urgent care area. *Id*. at 42. Should the inmate require urgent medical care, the response time is five to ten minutes. *Id*.

An additional policy applicable in this case is the District's practice of rescheduling medical appointments if they conflict with court hearings. *See* Def.'s Reply at 6. The District reschedules the appointments to take place "immediately" after the court date, but typically not on a Saturday or Sunday. *Id.* The urgent care area, however, is available on the weekends, as evidenced by the plaintiff's utilization of the service on Sunday, November 2, 2003. *Id.* at 4; Kendall Dep. at 54.

### B.  Factual Background

The undisputed facts in this case are as follows. On October 17, 2003, the plaintiff fractured his right leg while descending a set of concrete stairs. Def.'s Mot. at 5; Pl.'s Opp'n at 3. He underwent surgery at the Greater Southeast Community Hospital ("GSCH"), and doctors placed his leg in a cast. Def.'s Mot. at 5; Pl.'s Opp'n at 3. GSCH then released the plaintiff into the custody of the D.C. Department of Corrections, which contracts with the Center for Correctional Health Policies and Studies ("CCHPS") to provide medical care to inmates. Def.'s Mot. at 5-6; Pl.'s Opp'n at 3. Once the plaintiff arrived at the District's jail on October 25, 2003, Dr. Paulos Kidane and Jewel Kendall, a registered nurse, performed an intake medical examination. Def.'s Mot. at 5.

As a result of this intake examination, Kidane ordered that the plaintiff receive pain medication every eight hours. *Id.* at 11. The plaintiff received his first dosage of pain medication on October 25, 2003, and received it three times a day for the next five days, with two exceptions. *Id.* at 11-12. The plaintiff states that the pain in his leg worsened from October 25, 2003 until November 2, 2003 and that he repeatedly complained about the pain and the need for medical attention to correctional officers. *Id.* at 6-7. Each time the officer responding to the plaintiff's request told the plaintiff that he had called for medical care, but that it had not yet arrived. *Id.* at 7 & Ex. 1 ("Pl.'s Dep.") at 56. The plaintiff indicates that he submitted a form through the sick call system once before his court hearing and that a nurse came and administered 250 milligrams of Tylenol. Pl.'s Dep. at 57.

As a result of the intake examination, Kidane also referred the plaintiff to an orthopedic specialist "to be seen as soon as possible" because he needed "immediate attention." Pl.'s Opp'n at 4; Kidane Dep. at 24, 54. An appointment was set for October 31, 2003. Def.'s Mot. at 12; Pl.'s Opp'n at 4. On the morning of October 31, 2003, however, the plaintiff went to court for a scheduled court appearance and missed his appointment with the orthopedic specialist. Def.'s Mot. at 12; Pl.'s Opp'n at 4. Because the orthopedic appointment conflicted with the court hearing, the appointment was rescheduled for November 6, 2003. Def.'s Mot. at 12. On Sunday, November 2, however, GSCH readmitted the plaintiff after he continued to complain of severe leg pain. Pl.'s Opp'n at 5. The plaintiff subsequently underwent an amputation of his lower leg as it had become gangrenous. *Id.*

### C.  Procedural Background

The plaintiff filed a complaint in the D.C. Superior Court on October 13, 2006, alleging medical malpractice by GSCH and Dr. Talaat Maximous, the doctor at GSCH who originally

treated the plaintiff, and violations of his constitutional rights by the District and the Department

of Corrections.  *See generally* Compl.  The case was removed to this court on November 22,

2006,.  On May 14, 2007, the plaintiff filed an amended complaint, retaining the claims asserted

in his original complaint, but removing the Department of Corrections as a defendant[4] and

asserting negligence claims against Defabio, Inc., the management company in charge of the

premises where the plaintiff was injured, and Webster B. Trapp, the owner of the premises.  *See*

*generally* Am. Compl.  The plaintiff voluntarily dismissed defendant Defabio, Inc. on August 16,

2008, *see* Notice of Dismissal (Aug. 16, 2008), and voluntarily dismissed defendants GSCH and

Maximous on December 3, 2008, *see* Stipulation of Dismissal (Dec. 3, 2008).  *Id.* at 1-3.  The

District then filed the instant motion for summary judgment on January 14, 2009, which is now

ripe for review.  *See generally* Def.'s Mot.  The court now turns to this motion.


# III.  ANALYSIS

## A.  The Court Grants the District's Motion to Dismiss the Plaintiff's Claims Premised on Violations of His Fourteenth Amendment Rights

The District argues that to the extent the plaintiff's § 1983 claim is premised on a

violation of his Fourteenth Amendment rights, it must be dismissed because the Fourteenth

Amendment applies only to states and not to the District.  Def.'s Mot. at 16.  The plaintiff does

not respond to this assertion, *see generally* Pl.'s Opp'n, and as a result, the court may treat the

District's argument as conceded, *see Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003)

(holding that "when a plaintiff files an opposition to a dispositive motion and addresses only

---

[4]     *See Davis v. D.C. Dep't of Corrections*, 2009 WL 1617767, at *5 n.2 (D.D.C. June 11, 2009)
(noting that "[i]t is established that the Department of Corrections is not a suable entity" and
substituting the District of Columbia as the proper municipal defendant); *accord Thomas v.
District of Columbia*, 580 F. Supp. 2d 142, 144 n.1 (D.D.C. 2008) (noting that "[t]he District of
Columbia Department of Corrections is not a suable entity").

certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded").  Accordingly, the court grants the District's motion to dismiss the plaintiff's Fourteenth Amendment claim.[5]  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Ennis v. Lott*, 589 F. Supp. 2d 33, 35 n.2 (D.D.C. 2008) (dismissing the plaintiff's § 1983 claims premised on Fourteenth Amendment violations because "[t]he Fourteenth Amendment does not apply to the District of Columbia"); *accord Stoddard v. D.C. Pub. Defender Servs.*, 535 F. Supp. 2d 116, 117 n.3 (observing that the plaintiff may not invoke the Fourteenth Amendment because "that amendment does not apply to the District of Columbia").

### B.  The Court Grants the District's Motion for Summary Judgment With Respect to the Plaintiff's Eighth Amendment Claim

#### 1.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

---

[5]    The District also asserts that the plaintiff's case should be dismissed for failure to name an indispensable party pursuant to Federal Rule of Civil Procedure 19.  Def.'s Mot. at 21.  The plaintiff also failed to respond to this argument in its opposition, and as a result, the court could treat the argument as conceded.  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (recognizing a district court's discretion to treat a motion as conceded).  It is the court's preference, however, to adjudicate the plaintiff's claim on the merits.  *See Ciralsky v. CIA*, 355 F.3d 661, 674 (D.C. Cir. 2004) (holding that "jurisprudential preference [is] for adjudication of cases on their merits rather than on the basis of formalities" (alterations in original) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988))).  This is especially true here where the entirety of the District's argument is contained in one paragraph and contains no legal analysis.  *See* Def.'s Mot. at 21.

"genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### 2.  Legal Standard for Bringing a Claim Under 42 U.S.C. § 1983

To determine municipal liability under 42 U.S.C. § 1983, the district court must conduct a two-step inquiry.  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  First, the court determines whether the plaintiff establishes a predicate constitutional violation.  *Id.*  If so, the court then determines whether the complaint alleges that a custom or policy of the

7

municipality caused the violation.  *Id*.; *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658,

694 (1978).  The second prong requires a determination of whether "a policy or custom of the

District of Columbia caused the constitutional violation alleged under the first prong."  *Baker*,

326 F.3d at 1306; *Monell*, 436 U.S. at 694.  As the court in *Baker* stated, the plaintiff must

> allege[] an "affirmative link," such that a municipal policy was the "moving
> force" behind the constitutional violation.  There are a number of ways in which a
> "policy" can be set by a municipality to cause it to be liable under § 1983: the
> explicit setting of a policy by the government that violates the Constitution; the
> action of a policy maker within the government; the adoption through a knowing
> failure to act by a policy maker of actions by his subordinates that are so
> consistent that they have become "custom"; or the failure of the government to
> respond to a need (for example, training of employees) in such a manner as to
> show "deliberate indifference" to the risk that not addressing the need will result
> in constitutional violations.

*Baker*, 326 F.3d at 1306-07 (internal citations omitted).

### 3.  The Plaintiff Has Suffered Constitutional Harm

The District asserts that the plaintiff cannot establish a constitutional violation.  Def.'s

Mot. at 19.  Despite acknowledging the plaintiff's testimony that he "complained constantly,

during all three shifts over the entire period" he was in the D.C. Jail, *id.* at 7, the District insists

that the "undisputed facts reveal that plaintiff could have obtained medical care by using the sick

call box and forms," *id.* at 19.  In support, the District cites the plaintiff's utilization of the sick

call system during his incarceration and the fact that he received 250 milligrams of Tylenol for

his efforts.  *Id.*  The District further recounts that the plaintiff was informed of the various

methods of obtaining medical attention; was provided an inmate handbook which further

described the available medical services; underwent an intake examination in which he was

prescribed pain medication and referred to an orthopedist; had nurses visiting him three times a

day until October 30, 2004, to administer the pain medication; and had the sick call system at his

disposal. *Id.* at 10-12.  These steps, the District concludes, do not reflect a deliberate indifference to the plaintiff's alleged serious medical needs. *Id.* at 20.

The plaintiff counters by citing Kidane's instruction that the plaintiff's "chronic" condition be treated "immediate[ly]."  Pl.'s Opp'n at 7; Kidane Dep. at 24, 54.  The plaintiff further asserts that despite repeatedly requesting medical treatment, care was delayed for non-medical reasons.  Pl.'s Opp'n at 7-8.  The plaintiff maintains that these circumstances manifest deliberate indifference. *Id.*

To begin, the District's arguments inappropriately focus on whether the plaintiff exhausted every possible avenue for obtaining medical assistance, rather than walking through the elements of a § 1983 action as the law sets forth.  Because the District's arguments are either inapposite or untethered from the relevant legal provision, the court, with some difficulty, attempts to analyze the District's assertions.

The Supreme Court has held that an inmate who claims that the jail staff has violated his Eighth Amendment right against cruel and unusual punishment by failing to provide adequate medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Accordingly, the court now turns to address whether the plaintiff had "serious medical needs" and whether nurses, doctors or officers acted with deliberate indifference.

For the plaintiff to establish that he had a serious medical need, he must demonstrate that the injury "has been diagnosed by a physician as mandating treatment or [was] so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Kidane testified at his deposition that following his examination of the plaintiff, he recommended treatment "as soon as possible."  Kidane Dep. at

9

24.  Moreover, the seriousness of the plaintiff's injuries is underscored by the fact that the

plaintiff's leg was amputated.  *See Jennings v. Al-Dabagh*, 2004 WL 957817, at *2 (6th Cir. Apr.

29, 2004) (noting that "to show a constitutional violation based on an alleged delay in treatment,

the prisoner must place verifying medical evidence in the record establishing the detrimental

effect of the delay . . . such as a systemic infection, amputation of a limb, or even death"); *see

also Smith v. Mo. Dep't of Corrections*, 2006 WL 3161999, at *1 (8th Cir. Nov. 6, 2006)

(holding that an inmate adequately alleged deliberate indifference on the part of prison officials

after his diabetes-related foot problem was misdiagnosed as gout, which led to the amputation of

his foot); *Fuller v. Harris County*, 2005 WL 1444359, at *2 (5th Cir. June 21, 2005) (holding

that an inmate adequately alleged deliberate indifference to a serious medical need because the

delay in medical treatment allegedly resulted in the amputation of his leg).  Notably, the District

does not dispute the fact that the plaintiff would not have lost his leg had he been treated in a

timely manner.  *See generally* Def.'s Mot.  Because a physician prescribed treatment for the

plaintiff's condition which ultimately resulted in the loss of his limb, the court determines that a

reasonable jury could conclude that the plaintiff's injuries had a "serious medical need" when he

was admitted to the D.C. jail.

The question then is whether the plaintiff's condition was so obvious that the nurses who

provided pain medication, but failed to respond to the plaintiff's pleas for further assistance as

conveyed by the guards, acted with deliberate indifference.  Deliberate indifference requires the

plaintiff to show that these nurses subjectively knew that he "faced a substantial risk of harm and

disregarded that risk, 'by failing to take reasonable measures to abate it.'"  *Hunt v. Uphoff*, 199

F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, *Farmer v. Brennan*, 511 U.S. 825, 847

(1994)).  Indeed, the District's protocols, instruction and systems that it discusses at length mean

nothing if serious, obvious ailments are left unattended.  The record reflects that Kidane referred the plaintiff for "immediate attention," Kidane Dep. at 54, and that the nurses had access to the plaintiff's medical record, *id*. at 42.  The District does not dispute these facts.  *See generally* Def.'s Mot.; Def.'s Reply.  Moreover, the District does not contest that the plaintiff "begged" for medical assistance at least six times a day for five days, Pl.'s Dep. at 49-50, or that the guards relayed these messages to the nurses, *id*. at 56.  Yet, in spite of the repeated requests for medical assistance over and above the pain medication being provided, the nurses remained unresponsive.  *Id*.  Although neither side specifically addresses the subjective knowledge of the nurses, *Farmer*, 511 U.S. at 839-40 (requiring officers to have the requisite *mens rea* to support a claim of deliberate indifference), the court concludes, based on the uncontroverted record which places ample evidence of the plaintiff's serious medical condition at the feet of the nurses, that a reasonable jury could conclude that they were deliberately indifferent in handling the plaintiffs' requests, *id*. (stating that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence"); *Brown v. District of Columbia*, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (holding that delaying the transfer of an inmate to a hospital for sixty days constituted deliberate indifference); *Fitzke v. Shappell*, 468 F.3d 1072, 1076 (6th Cir. 1972) (reversing a district court order granting the defendant's motion for summary judgment because the plaintiff's injuries after a car accident were "clearly sufficient to indicate the need of medical attention[,] [and] the denial of such aid [for seventeen hours] constitutes the deprivation of constitutional due process").

### 4. The Plaintiff Has Failed to Raise an Issue of Fact as to Whether a District Policy or Custom Caused the Constitutional Harm

The District contends that the plaintiff is unable to satisfy the second prong of the § 1983 standard because he is unable to show that a custom or policy of the District caused the alleged constitutional harm. Def.'s Mot. at 16. The plaintiff, on the other hand, asserts that the District has an unconstitutional policy of giving priority to court proceedings rather than scheduled medical appointments and care. Pl.'s Opp'n at 5. Specifically, the plaintiff avers that the policy "delayed and prevented [him] from being seen by a doctor despite his serious medical condition and injury." *Id.* at 7. According to the plaintiff, this delay and denial amounted to a violation of the Eighth Amendment.[6] *Id.* at 8.

"There are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983." *Baker*, 326 F.3d at 1306. The court first addresses whether the District's policy of giving court hearings priority over medical appointments (the "priority policy") is constitutional. *Id.* The court notes that the priority policy forms only a small part of the overall framework for addressing the medical complaints of inmates. It is undisputed that the District provides inmates with an intake examination, Kendall Dep. at 41, access to a sick-call system, *id.* at 44, and urgent care seven days a week, *id.* at 19; Def.'s Reply at 4. These systems are discussed in more detail above, but suffice it to say, these policies do not fall close to the constitutional line. The medical coverage as outlined by the District is tailored to quickly address the medical needs of inmates.

---

[6] In addition, the plaintiff contends that the defendant has an unconstitutional policy of not providing medical care on the weekend. Pl.'s Opp'n at 5. The record plainly indicates, however, that the plaintiff himself received medical care on a weekend. *See* Kendall Dep. at 19; *id.* at 4. This argument, therefore, requires no further attention.

Indeed, it is undisputed that the plaintiff took advantage of these policies on November 2, 2003, when he requested and obtained urgent medical attention, and that between October 25 and November 2, he utilized these procedures to obtain medical attention from his nurses. *See* Def.'s Mot. at 7-13; Pl.'s Dep. at 51. Under these circumstances, it cannot be said that the District's priority policy or its broader framework governing the provision of urgent medical care to inmates was the "moving force" behind the plaintiff's constitutional injuries. *See Jenkins v. County of Hennepin, Minn*., 557 F.3d 628, 633 (8th Cir. 2009) (noting that "a policy that results in delayed treatment is not unconstitutional unless it evinces deliberate indifference to serious medical needs"); *Perkins v. Kan. Dep't of Corr*., 165 F.3d 803, 811 (10th Cir. 1999) (holding that "[a] negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation").

The court next looks to whether the plaintiff has established a custom or practice that differs from the District's stated policy. Although there is always a risk that policies will not be honored, resulting in serious medical needs not being identified and attended to as the instant case demonstrates, the plaintiff has not put forth any evidence to indicate that this case was anything but an exception. *See generally* Pl.'s Opp'n. Indeed, the plaintiff has not shown that the District has a pattern or practice amounting to custom that resulted in constitutional harm. *See St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) (recognizing that "if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware . . . [then] the supervisor could realistically be deemed to have adopted a policy"); *Arnold v. District of Columbia*, 211 F. Supp. 2d 144, 151 (D.D.C. 2002) (dismissing a claim against the District because the plaintiff's claims regarding a single encounter with two police officers, who allegedly assaulted the plaintiff, failed to allege the existence of a policy or custom of the District

13

that resulted in his injuries).  Accordingly, the plaintiff has not met his burden, and the court grants the defendant's motion for summary judgment with respect to the plaintiff's Eighth Amendment claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the District's motion for partial summary judgment and grants the defendant's partial motion to dismiss.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of August, 2009.

RICARDO M. URBINA
United States District Judge